Argued May 6, reversed and remanded June 24, rehearing denied July 22, 1924.

## A. B. HUDELSON AND W. A. HUDELSON *v.* SANDERS-SWAFFORD CO. AND N. E. DODD.

### (227 Pac. 310.)

**Garnishment—Not Discharged by Failure of Judgment Entry to Direct Sale of Attached Property.**

1. That a judgment entry contained no order for sale of attached property did not discharge garnishee from liability under Section 308, Or. L., where property attached consisted of a debt which was due and definite in amount, since it was sheriff's duty under Section 234 to levy thereon without any order for sale.

**Judgment—Amendment of Judgment Entry to Order Sale of Attached Property Held Proper.**

2. If an order for sale of attached debt was necessary on entry of judgment against defendant, an amendment to that effect was proper, where all the parties whose rights could be affected were before court and had notice, and had not changed their position.

**Judgment—Motions—Courts have Inherent Power to Amend or Vacate Order, Judgment or Decree Made During Term.**

3. Circuit Courts have inherent power at any time during term to modify, amend or vacate any order, judgment or decree made by such court during term.

---

See 4 C. J. 903, 1061; 6 C. J. 243; 28 C. J. 147, 276; 29 Cyc. 1518; 38 Cyc. 1565, 1579, 1583.

**Appeal and Error—Indefinite Description in Order for Sale of Attached Property Immaterial Where No Order Necessary.**

4. That an order for sale of attached property was so indefinite that it was impossible to determine therefrom what property was to be sold was immaterial, where no order for the sale of the attached property was necessary.

**Trial—Jury Determination Waived Where Both Parties Move for a Directed Verdict.**

5. Where both parties in an action at law move for a directed verdict, right to have questions of fact determined by jury is waived, and they consent to have all issues of law and fact determined by court, which is then required to determine all such issues.

**Trial—On Motion for a Directed Verdict, Where No Evidence to Prove Material Matter, Court must Decide for Defendant.**

6. Where there is no evidence tending to prove an essential matter, and defendant or both sides move for a directed verdict, defendant's motion is in nature of a demurrer to the evidence and requires court to decide in his favor or direct a verdict for him.

**Appeal and Error—On Motion to Direct Judgment by Both Parties— Judgment for Plaintiff if any Evidence of Material Matters.**

7. Where, at conclusion of testimony, both parties moved for a directed verdict and the court submitted the issues to jury who found for plaintiff, judgment is sustainable, if there was competent evidence which proved or tended to prove every material issue necessary to be established.

**Attachment—Attaching Creditor has No Greater Right Than Defendant, in Absence of Fraud or Collusion.**

8. An attaching creditor, in absence of fraud or collusion by which his rights have been impaired, cannot acquire any better rights to attached property than those which defendant in action had at time attachment was made.

**Garnishment—Proceeds of Sale of Mortgaged Property Paid to Agent of Mortgagees Held not Subject to Garnishment by Creditor of Mortgagor.**

9. Where mortgaged property was sold at public auction with understanding between mortgagor and mortgagees that proceeds should be paid to mortgagees' agent and applied in satisfaction of mortgage indebtedness, acceptance of proceeds by mortgagees' agent amounted to an actual payment to mortgagees themselves, and the money was not subject to garnishment by creditor of mortgagor.

**Garnishment—Immaterial That Sale Covered Unmortgaged Property Where Creditor Attached Neither Property nor Proceeds Before Paid Over to Mortgagees' Agent.**

10. That a small part of property sold by agreement to satisfy a mortgage indebtedness was not covered by mortgage did not authorize garnishment in hands of mortgagees' agent, where creditor did not attach property before it was sold nor proceeds before paid over to mortgagees' agent.

From Union:   J. W. Knowles, Judge.

In Banc.

Reversed and Remanded.   Rehearing Denied.

For appellant there was a brief over the name of *Messrs. Cochran & Eberhard,* with oral arguments by *Mr. A. A. Smith* and *Mr. Colon R. Eberhard.*

For respondents there was a brief and oral argument by *Mr. John S. Hodgin.*

RAND, J.—The defendant, N. E. Dodd, appeals from a judgment which the plaintiffs recovered against him as garnishee. The material facts are: The Sanders-Swafford Company, a corporation, was the owner and in possession of certain personal property consisting of horses, cattle, hogs and certain farm implements and machinery upon a farm in its possession at North Powder, Oregon. The corporation, on March 25, 1921, borrowed from A. A. Smith, trustee, the sum of $4,000, giving a promissory note therefor signed by the corporation and by E. M. Sanders individually. By its terms the note was payable one year after date. To secure its payment the corporation executed a chattel mortgage upon ninety head of its milk cows, steers, heifers and calves. This mortgage was placed of record on March 29, 1921. Subsequently, and on March 31, 1921, the corporation borrowed from S. W. Holmes the sum of $3,000, giving its promissory note therefor payable nine months after date and secured the payment thereof by a second chattel mortgage upon the personal property covered by the first mortgage and upon the remainder of the personal property owned by the corporation,

which mortgage was duly recorded on April 30, 1921. These mortgages became due and were unpaid. In order to secure their payment an agreement was entered into between the corporation and the mortgage creditors that the mortgaged property should be sold and the proceeds applied in payment of said debts. It was agreed that the corporation should advertise all of said mortgaged property for sale at public auction and that the defendant N. E. Dodd should act as clerk of said sale and collect the proceeds thereof and apply them in payment of the mortgage debts. A sale was had in the manner agreed upon on October 27, 1922, at which time the property was sold at public auction and the moneys realized from the sale were turned over and paid to Dodd, as agent and trustee for the mortgage creditors and with the understanding and agreement between the corporation and the mortgage creditors that all sums realized from said sale should be applied in satisfaction of the mortgages to the extent of the amount due thereon. The amount realized from said sale was less than sufficient to pay the amount due upon either of said mortgages. On the day of the sale and before the moneys received from the sale had been turned over by Dodd to the mortgage creditors, the plaintiffs commenced this action against the corporation and garnisheed the proceeds of said sale in the hands of Dodd, but no attempt was made to attach the property then being sold. The property itself was offered for sale and was sold by one D. M. Cartmill, as auctioneer, who had been selected by the corporation and the mortgage creditors for that purpose.

In answer to the notice of attached property served upon the defendant Dodd he made two answers, first stating, in effect, that he would hold the money until

it was ascertained whether it should be applied in payment of the mortgages or upon the attachment, and later he answered stating that he had no funds or money in his hands belonging to the defendant Sanders-Swafford Company. His answer being unsatisfactory to the plaintiffs, they applied to the court for an order, which was made requiring the garnishee to appear and be examined on oath concerning the same, and at the same time written allegations and interrogatories were filed and, together with a copy of said order, served upon the defendant Dodd. Dodd appeared and answered, and upon the trial judgment was rendered against him.

1. On the day of the trial, the Sanders-Swafford Company being in default, a judgment for the amount demanded in the complaint was entered against the corporation for want of an answer. As first prepared and signed by the circuit judge, the judgment entry contained no reference to any attached property, nor did it refer in any way to the garnishee defendant. During the trial of the action against the garnishee he moved the court for an order dismissing the proceedings upon the ground that the entry of a judgment against the principal defendant, which contains no order for the sale of attached property, operates to discharge the attachment lien and releases the garnishee from any liability growing out of the attachment proceedings. At the same time the plaintiffs applied to the court for permission to amend the judgment by inserting therein an order for the sale of the property attached in the action. Defendant's motion was denied and plaintiffs were permitted to amend. Thereupon a second judgment entry, which included an order for the sale of attached property, was signed by the court and entered in the Circuit

Court journal. This ruling, the garnishee contends, was erroneous.

Section 308, Or. L., provides: "If judgment is recovered by the plaintiff, and it shall appear that property has been attached in the action * * the court shall order and adjudge the property to be sold to satisfy the plaintiff's demands." By force of this statute it has been the uniform holding of this court that when property has been attached and judgment in the action is recovered by the plaintiff, the court must order and adjudge that the property attached be sold to satisfy the plaintiff's demand and that entry of a judgment in favor of the plaintiff and against the principal defendant, which fails to direct the sale of attached property, operates, because of such failure, as a waiver and discharge of the attachment lien. See *Bremer* v. *Fleckenstein,* 9 Or. 266; *Moore Mfg. Co.* v. *Billings,* 46 Or. 403 (80 Pac. 422); *Mertens* v. *Northern State Bank,* 68 Or. 273 (135 Pac. 885); *Fraley* v. *Hoban,* 69 Or. 180 (133 Pac. 1190); *Smith* v. *Dwight,* 80 Or. 1 (148 Pac. 477, 156 Pac. 573, Ann. Cas. 1918D, 563). But where the property attached consists of a debt which has matured and is due, there is no statutory authority for its sale and an order directing the sale of such debt would be a nullity. See *Murphy* v. *Bjelik,* 87 Or. 329 (169 Pac. 520, 170 Pac. 723), where this court, speaking through Mr. Justice HARRIS, said: "Construing Sections 233, 234 and 308, L. O. L., together it is plain that Section 308 does not contemplate an order directing the sale of a debt which has matured and is due; but it is collected for the plaintiff by the sheriff in the manner pointed out by Section 234: *Whitney* v. *Day,* 86 Or. 268 (168 Pac. 295)." Applying that principle to the facts in this case, if the money received by Dodd from said sale

was, while in his possession, subject to garnishment, as contended for by plaintiff, the statute made it his duty, upon demand, to immediately pay the same over to the sheriff, so that it could be applied in satisfaction of plaintiff's judgment. His possession of the money, therefore, coupled with his refusal to pay it over to the sheriff, the amount being definite and certain, made it the duty of the sheriff, under Section 234, Or. L., without any order for the sale of attached property, to "levy on the property of the garnishee for the amount thereof * * as if the execution was against the property of the garnishee."

2. But regardless of these considerations, even if an order for the sale of attached property had been necessary, it was clearly within the power of the court to grant the amendment since all of the parties, whose rights could be affected by the amendment, were before the court and had notice of the proposed amendment, and none of them had in any manner changed his position or done any act in reliance upon the original judgment entry.

3. It is within the inherent power of Circuit Courts of this state, in any proper case, at any time during the term to modify or amend, set aside or vacate any order, judgment or decree made by said court during said term: *Ladd & Tilton* v. *Mason,* 10 Or. 308; *Deering* v. *Quivey,* 26 Or. 556 (38 Pac. 710); *Ayers* v. *Lund,* 49 Or. 303 (89 Pac. 806, 124 Am. St. Rep. 1046); *Zelig* v. *Blue Point Oyster Co.,* 61 Or. 535 (113 Pac. 852, 122 Pac. 756); *Silliman* v. *Silliman,* 66 Or. 402 (133 Pac. 769); *First Christian Church* v. *Robb,* 69 Or. 283 (138 Pac. 856); *Anderson* v. *Anderson,* 89 Or. 654 (175 Pac. 287); *School Dist. No. 1* l. *Astoria Const. Co.,* 97 Or. 238 (190 Pac. 969).

4. Defendant further contends that the description obtained in the amended judgment entry of the attached property which the court ordered to be sold was so indefinite and uncertain that it is impossible to determine therefrom what property was directed to be sold. What we have already said disposes of this contention, for, since no order for the sale of attached property in this case was necessary, the objection to the sufficiency of the judgment entry for lack of such description, is untenable.

5. At the conclusion of the taking of the testimony the plaintiffs and the defendant each moved for a directed verdict. The court refused to direct a verdict in favor of either party and submitted the issues involved to the jury for their determination. The jury found for the plaintiffs. Defendant assigns the refusal of the court to direct a verdict in his favor as error.

It is settled by the decisions of this court that where the plaintiff and the defendant in an action at law each move for a directed verdict, it amounts to a waiver by the parties to the action of their right to have the questions of fact determined by the jury and a consent upon their part to have all issues of law and fact determined by the court, and imposes upon the court the duty to determine all such issues: *Patty* v. *Salem Flouring Mills,* 53 Or. 350 (96 Pac. 1106, 98 Pac. 521, 100 Pac. 298); *Rugh* v. *Soleim,* 92 Or. 329, 336 (180 Pac. 930); *First National Bank* v. *Bach,* 98 Or. 332, 335 (193 Pac. 1041); *Fletcher* v. *Yates,* 105 Or. 680, 690 (211 Pac. 179); *Tillamook Co. Bank* v. *International Co.,* 106 Or. 339 (211 Pac. 183, 941); *Wilson* v. *United States Lbr. etc. Co.,* 108 Or. 641, 657 (215 Pac. 491); *Banfield* v. *Crispen, ante,* p. 388 (226 Pac. 235).

In *First Nat. Bank* v. *Bach, supra,* and *Banfield* v. *Crispen, supra,* although both sides moved for a directed verdict, the court refused to direct a verdict and submitted the questions of fact to the jury and entered judgment in conformity to their verdict. Notwithstanding this, the action of the court in giving judgment in accordance with the verdict was upheld in each case upon the ground that the judgment was sustained by competent evidence.

In *Tillamook Co. Bank* v. *International Co., supra,* we said:

"The court is not authorized in any case to direct the jury to return a verdict which is not sustained by some competent evidence upon every material issue in the case. If the issue is one which must be established before recovery in the action can be had and the party having the affirmative of such issue fails to produce competent evidence in support thereof, his right of recovery will be defeated."

6. Hence, where there is an entire want of evidence tending to prove any material issue which must be established before the plaintiff can become entitled to recover, and the defendant or both sides move for a directed verdict, defendant's motion in such case is in the nature of a demurrer to the evidence, making it the imperative duty of the court, either on its own motion, to decide the case in favor of the defendant, or else direct a verdict for the defendant, and in such case a judgment in favor of plaintiff, whether based on the verdict of a jury or entered by the court upon its own motion, cannot be sustained.

In *Ridley* v. *Portland Taxicab Co.,* 90 Or. 529 (177 Pac. 429), this court, speaking through Mr. Justice HARRIS, held, in effect, that while a sustained motion for a nonsuit results merely in the dismissal of the

action and a sustained motion for a directed verdict, followed by judgment, concludes the controversy, yet each motion presents the same question for decision and calls upon the judge to decide whether there is a want of evidence to support a verdict for the plaintiff, assuming that all of the evidence for the plaintiff is true and giving to the plaintiff the benefit of any evidence favorable to him introduced by the defendant, and that each motion "challenges the legal sufficiency of the evidence," and "performs the same function in connection with the evidence as does a demurrer in connection with a pleading."

In *Collins* v. *United Brokers Co.*, 99 Or. 556 (194 Pac. 458), this court, after restating the rule announced in *Herbert* v. *Dufur*, 23 Or. 467 (32 Pac. 302), as follows:

"In deciding a motion for nonsuit, the court should assume those facts as true which a jury could properly find under the evidence; and if in any view of the evidence, taken in its most favorable light, a verdict may be rendered for the plaintiff, or if there are questions of fact which may be determined for the plaintiff, and if determined in his favor will entitle him to recover, the case should not be taken from the jury by nonsuit."

said: "This language is equally applicable when ruling upon a motion for an instructed verdict."

Again, in *Carty* v. *McMenamin*, 108 Or. 489 (216 Pac. 228), this court said:

"It is the law of this state that a nonsuit will not be granted whenever there is some competent evidence produced by the plaintiff in the trial of a cause supporting each material allegation of his complaint. This court has frequently declared that a motion for nonsuit is in the nature of a demurrer to the evidence, and that such a motion admits not only all that the

111 Or.—39

evidence proves, but all that it tends to prove. * * The defendants' motion for a directed verdict presents the same question as does their motion for a nonsuit, so far as it relates to the evidence.''

Under these authorities, where the plaintiff has wholly failed to establish his case, a motion for a nonsuit and a motion for a directed verdict is each directed to one end and each accomplishes the same purpose, namely, to challenge the legal sufficiency of the evidence, and is in the nature of a demurrer to the evidence and ''performs the same function in connection with the evidence as does a demurrer in connection with a pleading.'' The office of a demurrer to a pleading and that of a demurrer to the evidence are similar in the result intended to be accomplished. The first, while admitting the truth of the facts as stated in the pleading, objects to the legal sufficiency of the pleading itself. The latter, while admitting the truth of the evidence given and every fact which such evidence tends to prove and every legitimate inference or deduction to be drawn from the facts proved, challenges the legal sufficiency of the evidence to maintain the issue: See Bouvier's Law Dict., subject, ''Demurrer.''

7. From these authorities we think it follows that the judgment against the garnishee in the instant case must be sustained if, under the issues made by the pleadings, which we find to be sufficient, there is to be found in the record any competent evidence which, aided by whatever admissions the pleadings contain, proves or tends to prove every material issue necessary to be established before the plaintiffs can be entitled to recover, and also that if, upon any material issue which must be established before a recovery in the action can lawfully be had, there can be found no

competent evidence which in any way tends to establish it, the judgment cannot be sustained.

Plaintiffs base their right to recover against the garnishee solely upon the ground that they were creditors of the defendant corporation and that its property was sold and the proceeds of the sale paid over to the defendant garnishee and that they attached this money while in his possession, without offering any proof whatever that the sale was fraudulent or that Dodd was not entitled to retain the money for the purposes for which it had been paid to him. These facts alone have no probative value whatever. They also offered some evidence tending to show that a part of the property sold consisted of young calves which had been born since the mortgages were given and hence were not subject to the lien of the mortgages, and that the moneys realized from the sale thereof were paid over to and constituted a part of the money in the possession of Dodd. If these calves, before the sale, had been attached, this showing would have entitled the plaintiffs to the proceeds realized from the sale of the calves, but the sheriff's return to the writ of attachment shows, and it is conceded that the calves were not attached. It is wholly undisputed that the Sanders-Swafford Company borrowed from A. A. Smith, trustee, and from S. W. Holmes $7,000 in money and executed the two chattel mortgages in question to secure the payment of the money borrowed and that these mortgages were immediately placed of record and were wholly unpaid. There is no evidence or contention that there was anything fraudulent about the transaction of the mortgages or the sale. The plaintiffs could secure, through the attachment proceedings, no greater right

to recover from Dodd the moneys paid over to him than the Sanders-Swafford Company itself possessed.

8. It is an established rule of law in this state that an attaching creditor, unless he can show some fraud or collusion by which his rights have been impaired, cannot acquire, through an attachment, any higher or better right to the attached property or assets than those which the defendant in the action had at the time the attachment was made: *Oregon R. & N. Co.* v. *Gates,* 10 Or. 514; *Case* v. *Noyes,* 16 Or. 329 (19 Pac. 104); *Scheuerman* v. *Mathison,* 74 Or. 40 (144 Pac. 1177).

The facts in this case are "on all-fours" with the case of *Hoyt* v. *Clemans,* 167 Iowa, 330 (149 N. W. 442, L. R. A. 1915C, 166), and *Minneapolis Threshing Mach. Co.* v. *Calhoun,* 37 S. D. 542 (159 N. W. 127). In the first case the court said:

"It is elementary that, as a general rule, a garnishing creditor acquires no greater rights against the garnishee than the judgment debtor would have had against him, had he sought to recover from the garnishee, and it is manifest, under the facts above stated, that Clemens could not have recovered anything from Roberts save as for a breach of trust. What was done amounted to little, if anything, more than a foreclosure of the mortgage and landlord's lien by notice and sale, and in such case consent of all parties to the sale does not discharge the lien. But, if it does, the proceeds in either case are impressed with a trust by agreement of the parties. The trustee has at all times been in possession of the proceeds, and his claim thereto, under the trust reposed in him, is superior to a garnishment by a judgment creditor of the original owner of the property. No amount of argument can make this plainer. If authorities be needed, we cite the following as sufficient for the purposes of the case: *Peregoy* v. *Wheeler,* 88 Iowa, 732 (55 N. W. 462); *Jones* v. *Turck,* 33 Iowa, 246."

In the last case cited the court said:

"But in this case the mortgagees did not consent that the mortgagor might sell the mortgaged property and apply the proceeds of the sale on the mortgage debt.  The consent to the sale was given upon the express condition that the property was to be advertised and sold at public auction; that the proceeds of such sale were to be collected by Pettigrew, and by him applied in payment of the mortgage debts.  This arrangement amounted to the creation of an express trust, and the proceeds of the sale became a trust fund in the hands of Pettigrew.  He could not legally apply the same to any purpose other than the satisfaction of said mortgages.  Pettigrew's authority could not be revoked by the mortgagor, nor had the mortgagor any right to, or control over, the proceeds of the sale, except as to any surplus there might be over and above the amount of the indebtedness secured by such mortgages."

9, 10. In the instant case it is undisputed that the mortgaged property was sold at public auction by a third party with the understanding and agreement between the mortgagor and the mortgagees that the moneys realized from the sale of said property should be paid to Dodd, as the agent and trustee for the mortgagee creditors and be applied in satisfaction of the mortgage indebtedness.  Under this agreement the proceeds of the sale were received by Dodd as the agent of the mortgagees.  This amounted to an actual payment of the money to the mortgagees themselves and constituted a satisfaction of the mortgage debt to the extent of the amount paid.  As such, the money paid was no more subject to garnishment by the creditors of the defendant corporation than if it had been paid to the mortgage creditors by the corporation itself from any other funds belonging wholly to it. The fact that a small part of the property sold was

not covered by the mortgages and that the proceeds thereof came into the hands of Dodd to be applied in payment of the mortgages is wholly immaterial and of no importance, since the plaintiffs, not having attached this property before it was sold nor the moneys realized therefrom before the same had been paid over to Dodd, acquired no right to have it applied in satisfaction of their claims. The plaintiffs, therefore, by their garnishment proceedings against Dodd, acquired no greater right to the moneys realized from the sale of the calves, not covered by the lien of the mortgages, after its payment to Dodd as agent for the mortgage creditors, than they would have acquired had they attached any other money in the hands of a creditor of the corporation after it had been rightfully paid to him by the corporation in partial satisfaction of an admitted existing indebtedness.

As all of the facts in this case were wholly undisputed and as there was no evidence tending to show that plaintiffs had any right to any of the money in the possession of Dodd at the time of the attachment, or that any moneys in his hands were subject to attachment, there is no evidence in the case upon which the judgment can be sustained. It was therefore the duty of the court to direct a verdict in his favor.

The judgment will therefore be reversed and the cause remanded, with directions to enter a judgment dismissing the attachment proceedings against the garnishee.

REVERSED AND REMANDED, WITH DIRECTIONS.
REHEARING DENIED.